**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **RULA P.,**[1] ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **No. 25 C 9526** |
| **v.** ) | |
| ) | **Magistrate Judge Gabriel A. Fuentes** |
| **FRANK BISIGNANO,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**[2]

Before the Court is Plaintiff's Memorandum in Support of Remand and Reply (D.E. 19,

25) and Defendant's Memorandum in Support of Motion for Summary Judgment (D.E. 24).

**I.      Procedural History**

Plaintiff applied for Disability Insurance Benefits ("DIB") on December 13, 2021, alleging

a disability onset date of September 11, 2021. (R. 349.) After a hearing, the Administrative Law

Judge ("ALJ") issued a written decision denying Plaintiff's application on July 8, 2024, finding

her not disabled under the Social Security Act (the "Act").[3] (R. 349-66.) Plaintiff's date last insured

("DLI") is December 31, 2026.[4] (R. 349.) This appeal followed.

---

[1] The Court in this order is referring to Plaintiff by her first name and first initial of her last name in compliance with Internal Operating Procedure No. 22 of this Court. To the extent the Court uses pronouns in this order, the Court uses those pronouns used by the parties in their memoranda.

[2] On August 22, 2025, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to this Court for all proceedings, including entry of final judgment. (D.E. 9.)

[3] The Appeals Council subsequently denied review of the opinion (R. 1-6), making the ALJ's decision the final decision of the Commissioner. *Bertaud v. O'Malley*, 88 F.4th 1242, 1244 (7th Cir. 2023).

[4] To be entitled to DIB, a claimant must prove that their disability onset date preceded the DLI. *See Martin v. Kijakazi*, 88 F.4th 726, 728 (7th Cir. 2023), citing 42 U.S.C. § 423(c).

**II.     The ALJ Decision**

The ALJ applied the Social Security Administration's ("SSA") five-step sequential evaluation process to Plaintiff's claims. At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date ("AOD") of September 11, 2021. (R. 351.) At Step Two, the ALJ determined that Plaintiff had the severe impairments of postmastectomy lymphedema syndrome on the right and lumbar spine degenerative disc disease and several non-severe impairments. (R. 351-56.) At Step Three, the ALJ found that Plaintiff's impairments alone or in combination did not meet or medically equal any Listing. (R. 356.) The ALJ assessed Plaintiff as having a residual functional capacity ("RFC") to perform light work with the following exceptions:

> she can lift/carry 20 pounds occasionally and 10 pounds frequently; walk and stand for a total of 6 hours in an 8 hour day; push/pull as much as lift/carry; operate hand controls with the right hand frequently; occasionally reach over head to the right and for all other reaching, she can reach frequently to the right; frequently handle with the righthand; has fingering limitations frequently with the right hand; has feel limitations frequently on the right; occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; occasionally stoop, kneel, crouch, and crawl; never work at unprotected heights; occasionally work with moving, mechanical parts; occasionally operate a motor vehicle; and can occasionally be in environments of extreme cold, as well as in extreme heat and in vibration occasionally.

(R. 356.) The ALJ further noted that there was no need for any sitting limitation, referencing SSR 83-10. (R. 356, n.1.)

At Step Four, the ALJ found that Plaintiff was not capable of performing past relevant work as an executive manager/personal shopper. (R. 363.) At Step Five, the ALJ found Plaintiff capable of performing other jobs that exist in significant numbers in the national economy such as

2

Case: 1:25-cv-09526 Document #: 27 Filed: 05/20/26 Page 3 of 18 PageID #:2566

cashier, marker, and routing clerk. (R. 364-65.) Thus, the ALJ determined that Plaintiff was not disabled under the Act. (R. 366.)

### III.     Legal Standard

An ALJ's decision will be affirmed if it is supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. As the Seventh Circuit has made clear, ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). "All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id*. at 1054. *See also Padua v. Bisignano*, 145 F.4th 784, 789 (7th Cir. 2025) (stating that the district court's review of the ALJ's opinion will not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's"); *Cain v. Bisignano*, 148 F.4th 490, 496 (7th Cir. 2025) (describing reviewing court's role as "extremely limited"); *Thorlton v. King*, 127 F.4th 1078, 1080 (7th Cir. 2025) (reiterating that Seventh Circuit "review proceeds with a light touch—not holding ALJs to an overly demanding evidentiary standard and in turn reinforcing that claimants bear the affirmative burden of proving their disability"). The Seventh Circuit also has made clear that on its own review of district court decisions reviewing ALJ opinions for substantial evidence, district courts have a similar "minimal articulation" requirement: "A district (or magistrate) judge need

3

only supply the parties . . . with enough information to follow the material reasoning underpinning a decision." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024).

## IV.      Analysis

Plaintiff formulates two arguments for remand: that the ALJ failed to articulate adequately her reasons for finding Plaintiff's subjective complaints not credible and that the ALJ failed to evaluate properly the medical opinion evidence. The Court addresses each of these arguments below.

### A. The ALJ's Evaluation of Plaintiff's Subjective Symptoms Was Supported by Substantial Evidence.

Plaintiff contends that the ALJ did not adequately articulate the reasons for her credibility determination in compliance with SSR 16-3p. (D.E. 19: Pl.'s Mem. in Supp. of Remand ("Pl. Mem.") at 2.) In other words, Plaintiff disagrees with the ALJ's subjective symptom analysis. Social Security Regulation 16-3p, "Evaluation of Symptoms in Disability Claims," guides an ALJ in the evaluation of the intensity and persistence of a plaintiff's subjective symptoms, so that she can determine how those symptoms might limit the plaintiff's ability to perform work-related activities. SSR 16-3p, 2017 WL 5180304, *2. The Court "will overturn the ALJ's evaluation of a claimant's subjective symptoms only if it is patently wrong, which means that the decision lacks any explanation or support." *Hess v. O'Malley*, 92 F.4th 671, 679 (7th Cir. 2024) (internal quotations omitted); *see also Pufahl v. Bisignano*, 142 F.4th 446, 458 (7th Cir. 2025) (finding the ALJ provided specific, well-supported reasons for discounting plaintiff's subjective complaints); *Lincoln v. Bisignano*, 173 F.4th 886, 893 (7th Cir. 2026) (declining to remand the case based on ALJ's description of fatigue reports as "occasional" rather than frequent). The Seventh Circuit recognizes that subjective statements by plaintiffs about their pain or other symptoms are not

4

conclusive evidence of disability but must be supported by other evidence. *Pufahl*, 142 F.4th at 458.

    **1.  The ALJ's Assessment of Plaintiff's Right Upper Extremity Impairment Was Supported by Substantial Evidence.**

In 2018, Plaintiff was diagnosed with breast cancer and underwent a bilateral mastectomy with right-sided lymphatic dissection. (R. 352, 357.) Thereafter, she developed postmastectomy lymphedema syndrome on the right, which the ALJ deemed a severe impairment. (R. 351.) Due to this condition, Plaintiff claims that she suffers from chronic joint aches and pains in her right upper arm and that she is unable to make a fist, experiences swelling in this arm that does not improve with elevation but has been reduced with physical therapy, and experiences a need to "pump" her arm. (R. 357-58; Pl. Mem. at 3.) Plaintiff alleges an inability to use her right hand and has some decreased right upper extremity strength. (R. 358.)

The ALJ found that Plaintiff's cancer resolved within 12 months and that Plaintiff reported and demonstrated improvement in her right upper arm, with no indication that her hand is significantly compromised and reported benefit from compression. (R. 357.) The ALJ further found that the evidence failed to substantiate the level of restriction asserted and there was no indication of ongoing treatment with a specialist, aside from physical therapy. (R. 358.) The ALJ also noted that despite Plaintiff's statements as to significantly limited functionality with her right upper arm, the physical therapy records noted she uses a cane in the right hand with no indication of difficulty in doing so. (R. 358, citing R. 2079, 2124, 2154.)

Plaintiff contends that the ALJ errored in her assessment because lymphedema is a "chronic condition that can only be managed, not cured." (Pl. Mem. at 3.) Plaintiff takes issue with the ALJ's analysis of her doctor, Beata Stkya, M.D.'s November 2023 report that notes Plaintiff's associated residuals with her right upper arm, along with back pain, side effects from medication,

the need to shift positions, and reports of a knee replacement result in her inability to work. (R. 358, Pl. Mem. at 6; R. 2237.) The ALJ noted that this report was in tandem with Plaintiff's presentation of disability forms to be filled out by Dr. Styka, finding the report not persuasive because it was not reflective of the entire treatment record, including Dr. Styka's October 2023 report that painted a different picture from the report dated less than one month later. (R. 358, citing R. 2241.)

Additionally, the ALJ recognized Plaintiff's allegation of side effects from pain medication but noted that Plaintiff told her providers that she did not experience significant side effects with Gabapentin. *Compare* R. 353, 358 n. 2 (citing R. 2048, 2273, 2275-76 (reporting intermittent dizziness but no drowsiness) with R. 387 (testifying that medication made her extremely dizzy and drowsy.) Plaintiff also questioned the ALJ's citation to neuropathy because her condition is lymphedema (Pl. Mem. at 5), but the ALJ was simply reviewing Plaintiff's medical history that showed her cancer resolved within 12 months with no ongoing neuropathy. (R. 357-58.)

The ALJ also determined that Plaintiff's allegations concerning her right upper extremity lymphedema were not consistent with her own statements to her physical therapist indicating that therapy was very helpful. (R. 358, citing R. 1675 (responding very well to therapy with significantly reduced cording, decreased pain, and increased range of motion on June 6, 2023); R. 2162 (reporting on August 2, 2023 that therapy made Plaintiff feel "great" but swelling increased after she traveled by airplane); R. 2269, 2277 (reporting in February and March, 2024 improvement and right arm doing well); R. 2291 (reporting in January 2024 right arm doing well); R. 2295 (reporting in January 2024 being "very happy" with arm swelling not worsening while traveling); R. 2299 (reporting for period from May to December 2023, significant improvement

6

overall with decreased pain, and improved range of motion, and strength); R. 2305 (reporting in December 2023 "feeling significantly better" and finding therapy "very helpful.")

The ALJ further referred to the letter Plaintiff's physical therapist drafted supporting that Plaintiff's improvement could be maintained with consistent exercises. (R. 361, citing R. 2365.) Although Plaintiff testified that using compression on her arm was not helpful (R. 390), the ALJ's decision pointed to physical therapy records showing that Plaintiff's swelling was worse when she was not compliant with compression. (R. 358, citing R. 1341, 1351, 1353.) The ALJ also noted that Plaintiff told her treaters that her symptoms were significantly improved with physical therapy, and that she testified that her symptoms were almost constant. R. 357-59; R. 390-91 (testifying right upper arm was constantly very painful and heavy.)

Plaintiff argues that her physical therapist's letter supporting the ALJ's observation should be discounted because "records right after the decision rebut improvement with a surgery procedure for this condition." (Pl. Mem. at 12.) Plaintiff is referring to a surgical procedure she underwent for lymphedema about five months after the ALJ issued her decision. (R. 85.) But the information the ALJ had at the time of her decision was Plaintiff's testimony at the hearing that nothing could be done for her condition except physical therapy. (R. 391.) The Court's review is limited to the ALJ's assessment at the time of the hearing decision, in this case, July 8, 2024. (R. 366); 20 C.F.R. § 404.970(c) ("If you submit additional evidence that does not relate to the period on or before the date of the administrative law judge hearing decision...the Appeals Council will send you a notice that explains why it did not accept the additional evidence and advises you of your right to file a new application").

Plaintiff takes issue with the ALJ's conclusion that a cane was not medically necessary for her back or knees, discussed in greater detail below, while the ALJ also found Plaintiff's use of a

7

cane inconsistent with her lymphedema in the right hand. (Pl. Mem. at 3-4, 8.) Plaintiff misstates the ALJ's decision claiming that to "find a cane medically necessary, it must be prescribed" (D.E. 25: Pl.'s Mem. in Supp. of Remand ("Reply") at 4, citing R. 359) – a statement the ALJ did not make – where the ALJ acknowledged "some cane usage" noted at physical therapy sessions but "no evidence suggesting the cane is actually medically necessary." (R. 359) The ALJ elaborated on this lack of medical necessity with two examples supported by the record: *First*, that there was no evidence a cane was prescribed to plaintiff, and, *second*, that there was also no evidence of "consistently compromised strength or sensation." (R. 359, citing 1749, 2237, 2368-70, 2274-76, 2421.) The Court acknowledges the Seventh Circuit case law that an ALJ cannot reject a Plaintiff's use of a cane based solely on the fact that she was not prescribed one. *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) ("A cane does not require a prescription"). But "the lack of a prescription for a cane does not establish that a claimant does not in fact need a cane to ambulate… [a]nd a prescription for a cane from a medical professional does not *require* a finding of medical necessity" either. *Jennifer B. v. Dudek*, No. 22 CV 06352, 2025 WL 963378, at *6 (N.D. Ill. Mar. 31, 2025) (internal citations omitted) (emphasis in original).

Here, while the ALJ did acknowledge some cane usage, she also cited substantial evidence to support her finding that Plaintiff does not require a cane, including:

- No evidence of "consistently" compromised strength or sensation;
- Plaintiff did a lot of walking and traveling in late 2023 and 2024;
- Largely normal evaluations of gait and strength;
- The bulk of her lower back exams during the period at issue were largely normal;
- Solid hip and bilateral knee exams in January and February 2023 – no deformity, full range of motion, negative McMurray's sign, and negative Faber;
- In October 2023 she was doing relatively well and had a normal physical exam; and
- She denied use of a caretaker for activities of daily living during the July 2023 consultative exam.

(R. 358-59 (Record citations omitted).) Plaintiff bears the burden of proving her disability and failed to support her argument that the cane was medically necessary in light of the ALJ's detailed analysis calling that "necessity" into doubt. *See Lincoln*, 173 F.4th at 892, (finding substantial evidence supported ALJ's determination that the plaintiff did not require a cane on an ongoing basis where evidence reflected plaintiff's gait was normal and use of cane was not ongoing during the time of the alleged disability). Considering the ALJ's decision as a whole, it is clear the ALJ relied on more than the lack of prescription to discount her allegations regarding Plaintiff's need for a cane. *Id*. at 4. This Court declines the invitation to reweigh the evidence on this record. *See Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) ("We will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it.").

Here, the ALJ relied on Plaintiff's physical therapy records showing significant improvement including with range of motion, pain relief with the use of medication, and normal examinations; the ALJ contrasted that with Plaintiff's testimony that differed from her comments to her medical providers. *See Pufahl*, 142 F.4th at 458-59 (finding sufficient support in the ALJ's decision where ALJ thoroughly explained how plaintiff's statements often conflicted with the medical evidence); 20 C.F.R. § 404.1529(c)(3)(iv)-(vi) (stating that ALJs will consider the effect of treatment on pain and symptoms); SSR 16-3p (stating that ALJs "will compare statements an individual makes in connection with the individual's claim for disability benefits with any existing statements the individual made under other circumstances.")

2.  **The ALJ's Assessment of Plaintiff's Back and Knee Impairments Was Supported By Substantial Evidence.**

Plaintiff also takes issue with the ALJ's treatment of her back and knee impairments. Plaintiff alleges she is noted to have a slowed gait and requires sitting limitations. (R. 358-59.)

The ALJ sifted through all of the evidence, both positive and negative, and determined Plaintiff had some limited range of motion in her back, no SI joint tenderness and no limited range of motion in her hips, and no basis for limitation on sitting thus limiting Plaintiff to light work with additional postural limitations. (R. 359.)

Plaintiff contends that the ALJ erred in her analysis because the cane was recommended and takes issue with the ALJ's assessment that her treatment was conservative. The ALJ determined there was no evidence that a cane was medically necessary, as detailed in great length above, and that Plaintiff found significant relief with conservative treatment. (R. 359.) Plaintiff argues that her treatment was not "very conservative" (Pl. Mem. at 9, citing R. 359), considering her "multiple X-rays and MRIs, physical therapy, injection therapy and recommendation for surgery" and that the ALJ suggested a denial of side effects. (Pl. Mem. at 9.) But Plaintiff misrepresents the ALJ's description of side effects, neglecting to include the ALJ's specific description of the side effects, namely that the record contained denials of "significant" side effects. (R. 359.) Contrary to Plaintiff's suggestion, the ALJ did not deny side effects in a blanket fashion. (R. 359.)

The ALJ recognized the evidence that Plaintiff experienced pain from her back and knee impairments but concluded that her course of treatment was effective after analyzing the many examination findings that were normal, the effectiveness of pain medication, and plaintiff's having declined surgery. (R. 357, 359.) For example, the ALJ pointed to examinations that showed intact strength, normal gait, and negative straight leg-raise testing. (R. 359, citing R. 1439-40, 1749, 1792-94, 1811, 2275-76, 2369-70, 2421-22.) The ALJ discussed Plaintiff's reporting of significant pain relief with Gabapentin. (R. 359, citing R. 2275.) The ALJ also considered Plaintiff's reported significant pain relief with injections in her knee, and that despite her allegations that she needed

total knee replacement surgery, that was not reflected in the medical evidence. (R. 352-53, 357; *see* R. 1401-02, 1750.) Similarly, Plaintiff's doctors were divided on whether she even needed back surgery, and regardless, she was deferring the possibility of surgery as of March 2024 because medication significantly relieved her pain. (R. 357; *see* R. 2273-75.)

Although Plaintiff believes her course of treatment was consistent with her allegations, the ALJ's decision is supported by substantial evidence where Plaintiff repeatedly reported significant improvement with physical therapy, where other treatments were effective for her impairments, and where she displayed normal gait and relief with pain medication. Plaintiff's arguments amount to requests to reweigh the evidence, but the Court is "foreclosed from substituting our judgment for the ALJ's when the decision is supported by substantial evidence." *Lincoln*, 173 F.4th at 894.

### 3. The ALJ's Assessment of Plaintiff's Activities of Daily Living Was Supported By Substantial Evidence.

The ALJ determined that Plaintiff could perform activities of daily living and supported this assessment with substantial evidence. Plaintiff contends that the ALJ should have relied on a November 2023 doctor's report rather than other evidence in the record and that she was not functional.

Plaintiff argues the ALJ erred in relying on a treatment note from Plaintiff's primary care physician, Dr. Styka, on October 23, 2023, indicating that Plaintiff was able to "complete chores of daily living without any problems" (R. 358, citing R. 2241) rather than Plaintiff's preferred treatment note from Dr. Styka dated less than a month later on November 21, 2023, in which Plaintiff described significant problems performing activities of daily living. (Pl. Mem. at 6, citing R. 2237.) But the ALJ explained that the November 2023 treatment note Plaintiff favored was performed as part of a disability evaluation ("she is applying for disability…needs financial assistance on the government" (R. 2237)), while the other treatment notes did not document such

significant complaints. (R. 358, citing R. 2237, 2241.)  Again, the Court will not second-guess the ALJ's placing less weight on the November 2023 treatment note, and Plaintiff's argument that the ALJ's determination in this regard equates to a lack of substantial evidence for the ALJ's findings is emblematic of Plaintiff's fundamental misunderstanding of the substantial evidence standard and the well-established common law of Social Security appeals to the effect that a federal court on review of an ALJ's findings must *not* reweigh the record evidence.

Plaintiff also argues the ALJ erred in referring to Plaintiff as "quite functional." (R. 358.) Relying on Plaintiff's own reports, the ALJ supported this finding describing Plaintiff's ability to complete chores of daily living as discussed above, denial of use of a caretaker for completion of activities of daily living in July 2023, as well as normal treatment notes (including normal physical exam in October 2023), physical therapy records (although Plaintiff was not consistently compliant with home exercises), her right arm "doing well," traveling in 2023 and 2024, cooking Thanksgiving dinner, scoring four out of five on a strength test, and leg raise testing was negative. (R. 358-59.) The ALJ also described Plaintiff's ability to care for her two young children, go outside often, drive, shop in stores and by phone, engage in multiple daily hobbies, and frequently spend time with others. (R. 361.) The ALJ also relied on another report describing Plaintiff's wide-ranging daily activities and abilities such as taking her children to the park, out to eat and to the store, seeing her boyfriend multiple times a week and going out to eat or to movies, enjoying time with friends and getting together for birthdays, karaoke and out to eat. (R. 362.)[5]

---

[5] Plaintiff also takes issue with the ALJ's discussion of Behcet's disease (oral ulcers). But the ALJ explained that the medical evidence and Plaintiff's own statements reflect that the oral ulcers were effectively managed with medication, preventing flares. (R. 352, citing R. 2013, 2273.) Plaintiff failed to identify any functional loss she believes the ALJ should have found associated with this impairment or the medical evidence that supported it.

12

Here, the ALJ acknowledged Plaintiff's right arm issues, her knee and back pain, her intermittent cane usage, her activities of daily living, and a litany of other issues and factored them, where appropriate, into the RFC determination. The Court's review thus shows that "the ALJ provided specific, well-supported reasons for discounting [Plaintiff's] subjective complaints. That determination is not patently wrong and therefore provides no basis for overturning the ALJ's credibility determination." *Pufahl*, 142 F.4th at 459.

**B. The ALJ's Weighing of the Medical Opinion Evidence Was Supported by Substantial Evidence.**

The ALJ found the opinions of the state agency medical consultants, Bharati Jhaveri, M.D., and James LaFata, M.D., persuasive insofar as they were consistent with the RFC. (R. 361.) She also found the physical therapist's reference to improvement persuasive because it was supported by the objective medical facts. (*Id.*) The ALJ determined Dr. Styka's opinion not persuasive for the reasons discussed above. (R. 362.) The ALJ also found the opinions of consultative examiners Dinesh Jain, M.D. (October 2022) and Christen Tibbs, M.D. (July 2023) not particularly persuasive. (R. 362-63.)

Plaintiff contends the ALJ erred in assessing portions of the medical opinions in the record because the ALJ found Plaintiff less limited than did the aforementioned doctors. (Pl. Mem. at 10.) The Court disagrees and finds no error because substantial evidence supported the ALJ's conclusions about these medical opinions.

"An ALJ must evaluate the persuasiveness of a medical opinion provided by a medical source for its supportability and consistency." *Lincoln*, 173 F.4th at 894 (internal quotations and citations omitted). In determining this persuasiveness, the ALJ considers, most importantly, whether the opinion is supported by relevant and objective medical evidence and is consistent with other medical evidence in the record, as well as the extent of the medical professional's relationship

13

with the plaintiff and specialization. *Cain*, 148 F.4th at 496-97, citing 20 C.F.R. §§ 416.920c(a) and (c)(1)-(5). "In making these determinations, an ALJ is subject to only the most minimal of articulation requirements." *Id.* at 497 (internal quotations omitted).

1. **The ALJ's Treatment of the State Agency Medical Consultants Was Not Error.**

The ALJ adequately determined that non-examining state agency medical consultants Drs. Jhaveri and LaFata opinions were partially persuasive. Both opined that Plaintiff could perform light work with certain exceptions. (R. 419-441.) In November 2022, Dr. Jhaveri opined Plaintiff could never climb ladders, ropes, or scaffolds and she could frequently engage in all other postural maneuvering (R. 424); she could frequently reach and feel with the right hand. (R. 424-25.) In August 2023, upon reconsideration, Dr. LaFata affirmed these findings but concluded that Plaintiff was further limited to occasional pushing and pulling, frequent reaching, and occasional handling and fingering with the right hand. (R. 436-38.) Although the ALJ recognized the medical consultants' findings were supported by citation to specific evidence (R. 361), the ALJ rejected the manipulative restrictions identified by Dr. LaFata because they were inconsistent with other record evidence. Referring to her previous discussion "(Discussion above)", the ALJ explained that such significant functional restrictions were inconsistent with the improvement Plaintiff experienced with physical therapy and compression therapy, as well as some examination findings demonstrating normal grip strength. (R. 361, citing R. 1749, 2275.)

Plaintiff also takes issue with how the state agency consultants acknowledged daily activities in their assessment. (Pl. Mem. at 10, citing R. 440 ("allegation of disability is inconsistent with the ADLs … ADLs … not severely impaired … allegation of severity … is not consistent with claimant's ability to function generally well from day to day".) The ALJ observed that the relatively normal daily activities (driving, shopping, and handling financial responsibilities) were

14

evidence to which the consultants cited in their findings. (R. 361.) Plaintiff appears to want to argue both ways – that certain portions of these opinions are helpful to her while other portions are not. This aspect of Plaintiff's argument is yet another invitation to reweigh the evidence, and the Court again declines that invitation.[6]

Plaintiff contests the reliability of normal grip strength examination findings of two of her other treaters (Pl. Mem. at 11), a cardiologist and rheumatologist, who generally treat other ailments, but this is merely an argument to reweigh the evidence, which this Court will not do. *Padua*, 145 F.4th at 789. Plaintiff accuses the ALJ of playing doctor, contending that the ALJ did not address updated evidence related to back deficits not reviewed by the Agency such as injection therapy, a November 2023 MRI, Dr. Steven Mardjetko's finding that surgery was warranted, and Jerry Bauer, M.D.'s notation of failed conservative treatment. (Pl. Mem. at 11.) The Plaintiff fails to identify what functional loss the ALJ overlooked and fails to account for how the ALJ expressly

---

[6] Plaintiff submitted medical records from various treaters dated July 17, 2024, through January 9, 2025, to the Appeals Council. (R. 2.) Plaintiff's citation to this evidence does not support her motion for remand because the evidence post-dates the ALJ's decision by about five months and was not in the record before her. (Pl. Mem. at 11, citing R. 85.) The Appeals Council informed Plaintiff that the ALJ decided her case through July 8, 2024, and this additional evidence does not relate to the period at issue and therefore does not affect the decision, but, if she wanted the Commissioner to consider if she was disabled after July 8, 2024, she would need to apply again. (*Id.*) The Court's review is limited to the ALJ's assessment at the time of the hearing decision, in this case, July 8, 2024. (R. 366.) 20 C.F.R. § 404.970(c) ("If you submit additional evidence that does not relate to the period on or before the date of the administrative law judge hearing decision...the Appeals Council will send you a notice that explains why it did not accept the additional evidence and advises you of your right to file a new application"); *Greenwell v. Saul*, 811 F. App'x 368, 370 (7th Cir. 2020), citing *Schmidt v. Barnhart*, 395 F.3d 737, 742 (7th Cir. 2005) (concluding that the Court's review is "limited to the ALJ's assessment of [Plaintiff's] 'condition as it existed at or prior to the time of the administrative hearing.'") In addition, Plaintiff complains that the ALJ failed to recognize that she "planned to proceed with lymphatic surgery that insurance had not approved" claiming this rebutted the improvement the ALJ presumed. (Pl. Mem. at 11, citing R. 2121.) Plaintiff is referring to a September 2023 note stating that Plaintiff "has not been approved for the lymphatic surgery she was hoping to undergo and so has been even more diligent about her [home exercise program]." (R. 2121.) This note did not state that Plaintiff intended to proceed with surgery, but rather, it indicated that Plaintiff was experiencing improvement with exercises stating that she "feels significantly better in her upper arm and her lower arm has begun to show signs of improvement." (R. 2121.) Once again, review of the ALJ's decision is limited to the record before the ALJ.

15

recognized most of the items on this list. (R. 359). Significantly, Plaintiff failed to mention that her providers were divided on whether she needed back surgery, and regardless, she was deferring the possibility as of March 2024 because medication significantly relieved her pain. (R. 357, 2273-75.)

### 2. The ALJ Did Not Err With Respect to Dr. Atkenson and the Consultative Examiners.

Finally, Plaintiff takes issue with the ALJ's analysis of orthopedic surgeon Paul Atkenson, M.D., consultative examiner Dr. Jain's October 2022 opinion, and consultative examiner Dr. Tibbs' July 2023 opinion. The ALJ discounted Dr. Atkenson's opinion,[7] which the ALJ explained as coming on the heels of Plaintiff's foot difficulties in early 2023 but in the absence of evidence of ongoing foot treatment and that gabapentin provided significant relief for Plaintiff's knee and back. (R. 362.) Dr. Atkenson indicated that Plaintiff would only need to elevate her right leg for two to three months. (R. 1494.)

The ALJ also adequately articulated her reasoning for finding unpersuasive Dr. Jain's opinion that Plaintiff was limited to one hour standing due to pain in the low back and knees and limited to five to six pounds lifting or carrying. Notably, the ALJ explained that the standing limitation was unsupported because it was based on Plaintiff's subjective statements inconsistent with her course of treatment. (R. 362.) As to the lifting limitation, the ALJ referenced her earlier discussion regarding Plaintiff's own reporting and objective evidence of improvement with her lymphedema symptoms (swelling and pain improved by physical therapy and consistent home exercise program). (*Id.*) *See Lincoln*, 173 F.4th at 894-95 (finding reversal not warranted because

---

[7] Dr. Atkenson opined that Plaintiff could frequently lift and carry up to 10 pounds, could stand or walk for less than one hour during an eight-hour workday, needed to elevate her right foot periodically for several months, and could occasionally push/pull with her hands, and could occasionally reach, frequently handle, frequently finger and frequently feel, but she could never climb, balance, stoop, kneel, crouch, or crawl. (R. 1494-95.)

ALJ's analysis of consistency and supportability of nurse's opinion was adequate where the nurse's opinion was seemingly based solely on the plaintiff's complaints rather than objective evidence).

Last, the ALJ evaluated Dr. Tibbs opinion. (R. 362.) Dr. Tibbs opined that Plaintiff could stand and walk unassisted, and that her ability to perform fine and gross manipulation was moderately difficult with the right upper extremity. (R. 1796.) The ALJ found this limitation, as described by Dr. Tibbs, to be not particularly persuasive because the statement that Plaintiff had moderate difficulty with her right arm was vague and not helpful in defining the RFC. (R. 362.) In support, the ALJ referenced that while the physical exam showed some reduced right arm and grip strength, the Plaintiff did not need assistance with activities of daily living (including preparing her own meals, handling financial responsibilities, caring for her two young children, going outside often, driving, shopping, engaging in hobbies, and frequently spending time with others including her sisters, friends, and boyfriend) and that when tested, her grip strength was normal. (R. 362-63, citing R. 629-36, 1792.) Plaintiff takes issue with the ALJ's analysis of her ability to care for her children and "not having limitations in activities of daily living," but the ALJ simply restated what Dr. Tibbs wrote in her report. *Compare* R. 362 ("claimant does not need assistance with activities of daily living") with R. 1792 ("claimant does not require a caretaker for ADLs"); *see also*, discussion *supra* regarding activities of daily living. Regardless, Dr. Tibbs opined that Plaintiff would have moderate difficulty performing fine and gross manipulation with the right hand (R. 1796), and the ALJ's RFC limited Plaintiff to frequent fingering and handling with the right hand. (R. 356.) Therefore, Plaintiff has not identified reversible error.

The Court finds that the ALJ's discussion adequately articulates her reasons for finding that Plaintiff's condition did not support and was not consistent with her claims of disabling symptoms.

17

As discussed above, the ALJ cited to specific and substantial evidence in the record to support her conclusion that no medical or other evidence in the file warranted a greater degree of limitation during the period at issue. Plaintiff's appeal made a wide variety of attacks on how the ALJ reached her decision in this case, yet, for the reasons discussed specifically above, the ingredients in that stew, alone or in combination, did not result in an edible potpourri, when it came to appellate review of the ALJ's decision under the substantial evidence standard. "Substantial evidence," as the Seventh Circuit has said again and again, is a low bar. It does not permit the district court to reweigh evidence, or as in our cooking example, to claim that the stew is bad because the ALJ chose ground chuck instead of ground sirloin, did not add enough pepper, or should have sauteed the mushrooms a few moments longer. In affirming the ALJ in this case, the Court has taken heed of those limitations on its review power.

## CONCLUSION

For the foregoing reasons, the Court denies Plaintiff's Motion for Summary Judgment (D.E. 19) and grants Defendant's motion for summary judgment (D.E. 24).

**SO ORDERED.**

                **ENTER:**

                _____
                **GABRIEL A. FUENTES**
                **United States Magistrate Judge**

**DATED: May 20, 2026**